**Oskar B. MCMILLIAN, Plaintiff–Appellant,**

v.

**Jon E. LITSCHER, Daniel L. Bertrand and Jeffrey P. Endicott, Defendants–Appellees.**

**No. 99–3029.**

United States Court of Appeals, Seventh Circuit.

Submitted April 29, 2003.[*]

Decided June 25, 2003.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, this appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

Before COFFEY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

## ORDER

Wisconsin inmate Oskar McMillian brought this suit, *see* 42 U.S.C. §§ 1983 and 1985, alleging that a policy enacted by Wisconsin prison officials prohibiting access to sexually explicit materials violated his First Amendment rights. He also alleged that then-Governor Tommy Thompson entered into a conspiracy with prison officials to violate Wisconsin prisoners' constitutional rights. The district court sua sponte dismissed Mr. McMillian's conspiracy claims, *see* 28 U.S.C. § 1915A(b), on the ground that his allegations were too vague and conclusory. It later dismissed his First Amendment claims without prejudice, including a request for injunctive relief to halt enforcement of the rule, for failure to exhaust his administrative remedies under the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a); Fed. R.Civ.P. 12(b)(6). Mr. McMillian appeals, but we affirm.

In 1998, the Wisconsin Department of Corrections revised Wisconsin Admin. Code § DOC 309 to strictly curtail prisoner access to potentially pornographic material. Before this amended rule went into effect, Mr. McMillian, then incarcerated at the Green Bay Correctional Institution, filed a complaint with the prison's Institution Complaint Examiner ("ICE") challenging its constitutionality. Mr. McMillian sought redress from the "[u]nconstitutional deprivation of DOC Prisoner's receipt of Publications." He claimed that banning the receipt of personal photo-

graphs and publications that contain nudity violated his First Amendment rights. Four months later, the ICE recommended that Mr. McMillian's complaint be dismissed, noting that the changes to § DOC 309 had been already approved and would be implemented. The Warden agreed with that recommendation and dismissed the complaint. Mr. McMillian appealed, but the DOC Secretary affirmed. Shortly thereafter, Mr. McMillian filed this action in federal district court, alleging among other things the denial of his First Amendment rights.

Meanwhile, as Mr. McMillian's inmate complaint was working its way through the prison grievance system, amended § DOC 309 had gone into effect. Relying on the amended rule, prison officials on two occasions confiscated magazines, photographs, calendars, and letters belonging to Mr. McMillian and other inmates. After the first property seizure, the prison disciplined Mr. McMillian for violating § DOC 309. He then appealed unsuccessfully to the Warden, but took no further steps to appeal through the prison's internal grievance system. Similarly, after the second seizure of his property, Mr. McMillian wrote a protest letter to the Warden, but he did not utilize the grievance system.

At the same time that Mr. McMillian's complaint was pending in federal district court, the amended version of § DOC 309 was challenged on First Amendment grounds in a class action suit brought by other inmates. *See Aiello v. Litscher,* 104 F.Supp.2d 1068 (W.D.Wis.2000). Pursuant to a settlement reached in that case,

§ DOC 309 was again revised; it now has a different definition of "nudity," and contains more specific guidelines regarding prohibited materials.

■ On appeal, Mr. McMillian first challenges the district court's dismissal of his conspiracy claims under § 1915A. We agree that his claim under 42 U.S.C. § 1985(3) should be dismissed, though not because his allegations were too "vague" or "conclusory," the reasons cited by the district court. Contrary to the court's suggestion, Mr. McMillian did not have to plead facts. "The federal rules require ... only that the complaint state a claim, not that it plead the facts that if true would establish ... that the claim was valid." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002).

■ The problem with Mr. McMillian's allegations is not that they are too vague, but that they negate his conspiracy claim. Under § 1985, Mr. McMillian was required to allege that the defendants' actions were motivated by racial, or otherwise class-based, discriminatory animus. *See Green v. Benden,* 281 F.3d 661, 665 (7th Cir. 2002). But he did not allege class-based animus; indeed, his complaint repeatedly acknowledges that the challenged policy applied to *all* inmates. By alleging facts that demonstrate that the policy was not targeted against a protected class, Mr. McMillian pleaded himself out of court. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 928 (7th Cir. 2003).[1]

---

1. The defendants contend that this claim also could have been dismissed pursuant to the intracorporate conspiracy doctrine. Under this doctrine, first recognized in this circuit in *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972), managers and employees of a corporation jointly pursuing lawful business do not become "conspirators" when acts

within the scope of their employment are said to be retaliatory or discriminatory. *See also Travis v. Gary Cmty. Mental Health Ctr.,* 921 F.2d 108, 110 (7th Cir.1990). This circuit has applied the doctrine in § 1985 actions brought against employees of the same *government* entity, *see Wright v. Ill. Dep't of Children and Family Servs.,* 40 F.3d 1492, 1508

But Mr. McMillian's conspiracy claims may not have been limited to § 1985(3). Although he alleged specifically that the defendants conspired under that provision, he may have meant to rely on 42 U.S.C. § 1983, which also authorizes civil conspiracy claims. *See, e.g., Lewis v. Washington,* 300 F.3d 829, 831 (7th Cir.2002). Indeed, plaintiffs who point to the wrong legal theory, particularly those proceeding pro se, may nevertheless state a cognizable cause of action. *Kennedy v. Nat'l Juvenile Det. Ass'n,* 187 F.3d 690, 695 (7th Cir.1999). In pleading a conspiracy under § 1983, Mr. McMillian needed only to allege the parties involved, its general purpose, and the approximate date to provide the defendants with notice of what they were accused of. *See Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir.2003); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002). Mr. McMillian's complaint satisfies this requirement.

■ But as with his § 1985 claim, Mr. McMillian pleaded himself out of court on a § 1983 claim. The complaint alleged in general terms that there was a conspiracy to violate his First, Ninth, and Fourteenth Amendment rights. But the complaint also alleged specific actions that contradicted his claim. It alleged that former governor Thompson worked "in furtherance of his political ill will towards state prisoners," Compl. at 7, and lobbied for a policy to restrict inmate access to pornography. It further alleged that the current and former DOC secretary and two wardens implemented the policy "in execution of Governor Thompson's political agenda of ill will towards prisoners." *Id.* at 10. In short, Mr. McMillian alleged that Thompson pursued a policy that restricted prisoner access to pornography for politi-

cal reasons, successfully lobbied the legislature to change the policy, and then had the DOC carry it out. These facts do not support the existence of an express or implied agreement to deprive Mr. McMillian of his constitutional rights, nor do they suggest that the defendants' acts deprived him of a constitutional right. Instead, they describe a politician employing the tools of government to achieve a political end. Therefore, the problem is not that Mr. McMillian pleaded conspiracy in general terms, it is that he accused Thompson and Sullivan of conduct that is not conspiratorial. *See Tierney v. Vahle,* 304 F.3d 734, 740 (7th Cir.2002). Consequently, his complaint does not support a claim under § 1983.

Next we turn to Mr. McMillian's First Amendment claims, which the district court dismissed for failure to exhaust. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any ... prison ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In its order dismissing Mr. McMillian's complaint for failure to exhaust administrative remedies, the district court provided only a scant explanation: "plaintiff filed an administrative remedy concerning the proposed rule change in August 1998" and has "filed no administrative remedies concerning the deprivation of his property in December 1998 or February 1999.... Plaintiff did not exhaust his administrative remedies concerning the deprivation of his property in violation of the First Amendment." App. at 105. The court gave no further explanation for dismissing Mr. McMillian's claim that arose out of the

(7th Cir.1994); *Hartman v. Bd. of Trs.,* 4 F.3d 465, 469–70 (7th Cir.1993). Because Mr. McMillian alleged facts that undermined his

§ 1985 claim, however, we need not reach the doctrine's applicability.

denial of his initial, preenforcement complaint. But the record demonstrates that Mr. McMillian did in fact fully exhaust his administrative remedies relating to the denial of that grievance—he pursued his appeal to the highest level; there is nothing more he could do.

■ Although the district court erred by dismissing on exhaustion grounds Mr. McMillian's preenforcement challenge to § DOC 309 as it was initially amended in 1998, dismissal is nevertheless appropriate because the claim is now moot—the version of § DOC 309 challenged by Mr. McMillian is no longer in effect. An amendment that clearly rectifies a rule's defect renders moot a request for an injunction against the application of that rule. *Rembert v. Sheahan*, 62 F.3d 937, 940–41 (7th Cir.1995). Here, Mr. McMillian does not argue that the changes made to § DOC 309 after he filed suit were insufficient to cure his First Amendment concerns. Instead, he asserts merely that the current policy is politically motivated. Because Mr. McMillian no longer contends that his First Amendment rights are in jeopardy, his request for injunctive relief is moot. Consequently, the district court's dismissal of his pre-enforcement claim should be with prejudice, and we accordingly modify the judgment in that respect.

■ Mr. McMillian may have exhausted his administrative remedies with respect to his pre-enforcement challenge, but he did not do so with respect to the subsequent seizures of his property. Just as Mr. McMillian pursued internal remedies to challenge the denial of his pre-enforcement grievance, so too could he have used the administrative process to contest the prison's confiscations of his personal property. He was required to exhaust these claims because prison officials may have confiscated his property for reasons unrelated to the challenged policy. Or perhaps the confiscation resulted from a misapplication of the policy. Indeed, in his challenge to the first seizure of his property, Mr. McMillian asserted that several of the seized items "were not contraband nor did they contain nudity," Compl. Attach. BB, suggesting that the items may have been taken for reasons unrelated to § DOC 309. Similarly, he protested that the second seizure of his photographs was "arbitrary" and performed outside the scope of the policy. Consequently, it is possible that he could have gained relief from the prison, and § 1997e(a) mandates that he at least try before heading to district court.

Accordingly, the judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED